IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MGM ENTERPRISES, INC., | : | |
|     Plaintiff | : | No. 1:22-cv-00588 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| ROCKINGHAM INSURANCE CO., | : | |
|     Defendant | : | |

### MEMORANDUM

Presently before the Court is Defendant Rockingham Insurance Company ("Defendant")'s motion to dismiss Plaintiff MGM Enterprises, Inc. ("Plaintiff")'s amended complaint. For the reasons that follow, the Court will grant the motion on ripeness grounds and dismiss Plaintiff's complaint without prejudice.

**I.   BACKGROUND**

    **A.   Procedural Background**

On April 22, 2022, Defendant filed a notice of removal in this Court of an action filed against it by Plaintiff in the Court of Common Pleas of York County, Pennsylvania. (Doc. No. 1.) On April 25, 2022, Defendant filed a motion to dismiss Plaintiff's complaint, along with a brief in support. (Doc. Nos. 2-3.) On May 9, 2022, Plaintiff filed an amended complaint seeking damages under Pennsylvania law against Defendant for breach of contract and bad faith pursuant to 42 Pa.C.S. § 8371, relating to a commercial property insurance policy issued to Plaintiff by Defendant. (Doc. No. 6.) In response to Plaintiff's amended complaint, Defendant filed a second motion to dismiss, along with a brief in support, and the Court denied Defendant's initial motion as moot. (Doc. Nos. 7-8, 10.) On May 26, 2022, Plaintiff filed a brief in opposition to Defendant's motion, which was followed on June 9, 2022, by Defendant's reply brief. (Doc.

Nos. 11-12.)  Accordingly, Defendant's motion to dismiss has been fully briefed and is ripe for disposition.  (Doc. No. 7.)

   **B.**  **Factual Background**

In its amended complaint, Plaintiff alleges that it entered into an insurance contract with Defendant for property insurance covering an apartment complex in Virginia Beach, Virginia.  (Doc. No. 6 ¶¶ 5-6.)  Plaintiff's policy with Defendant, which is attached to the amended complaint, provides for "Loss of Income" coverage, which covers "the loss of earnings and extra expenses incurred within 12 consecutive months after the date of direct physical loss or damage to property unless a higher 'limit' for this coverage is shown in the 'declarations.'"  (Doc. Nos. 6 ¶ 9, 6-1 at 317.)  Plaintiff alleges that the "declarations" portion of the policy provides that "Loss of Income" coverage amounts to "Actual Loss Sustain [sic]" which encompasses "actual losses due to the [f]ire through the date of repair, as well as the time necessary for [Plaintiff] to resume normal business activities."  (Doc. No. 6 ¶¶ 10-11.)

On May 20, 2021, a fire broke out at the Virginia Beach complex, damaging eighteen (18) of Plaintiff's insured units.  (Id. ¶ 7.)  Plaintiff subsequently filed a claim for the damage with Defendant.  (Id. ¶¶ 7-8.)  On October 18, 2021, Defendant sent Plaintiff a letter informing it that loss insurance payments to Plaintiff would cease on May 20, 2022, one year after the fire.  (Id. ¶ 12.)  After being contacted by Plaintiff's counsel, Defendant agreed to extend loss insurance payments for eighteen (18) months after the date of the fire, through November 2022.  (Id. ¶¶ 13-14.)

Plaintiff contends that Defendant's representation that it will cease loss insurance payments in November 2022 makes it liable for breach of contract and bad faith under Pennsylvania law.  (Id. ¶¶ 21-38.)  According to Plaintiff, its monthly lost business income is

$20,499.00 and losses will "extend beyond May 20, 2022." (Id. ¶¶ 16-17.) On both counts, Plaintiff requests damages in "an amount which exceeds $50,000" plus fees, interest, and costs, as well as punitive damages and attorney's fees on its Pennsylvania bad faith claim. (Id. ¶¶ 29, 38.) In the alternative, should the Court find that Virginia law applies to the case, the Plaintiff requests attorney's fees on a finding of bad faith under Va. Code § 38.2-209. (Id. ¶ 38.) While Plaintiff vaguely alleges that it has sustained damages, Plaintiff has not alleged that Defendant has stopped making monthly loss of income payments. (Id. ¶ 29.) What Plaintiff has alleged is that it anticipates that Defendant will cease payments sometime after May 20, 2022, or November 20, 2022, and that the fire damage will not have been fully remediated at that point, leading to an indeterminate number of months during which Plaintiff's business losses will go uncompensated. (Id. ¶¶ 14-20.) In its opposition brief, Plaintiff states that "[b]oth parties anticipate that MGM's losses will exceed eighteen months." (Doc. No. 11 at 11-12.) Plaintiff has not alleged that the Defendant's anticipated denial of coverage has caused any present loss or injury.

In response to the facts alleged in the amended complaint, Defendant argues that Plaintiff's claim(s) should be dismissed because: (1) Plaintiff lacks standing to bring suit because it is not the insured entity; (2) Virginia law applies and there is no cause of action for bad faith under Virginia law; (3) Plaintiff's claims are not ripe for judicial review; and (4) Plaintiff's claim for attorney's fees under Virginia law is not an independent cause of action and has been brought prematurely. (Doc. Nos. 7-8.)

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Lack of a Justiciable Controversy

The Court first addresses Defendant's argument that Plaintiff's claims are not ripe for review, as justiciability is a jurisdictional issue. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (holding that jurisdiction under Article III must be decided "as a threshold matter"). Allegations that a plaintiff's complaint lacks a justiciable controversy are typically analyzed pursuant to Rule 12(b)(1), as they implicate subject matter jurisdiction. See Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 267-68 (3d Cir. 2016) (noting that the district court analyzed the defendant's motion to dismiss under 12(b)(1) because it concluded that it raised an Article III justiciability issue); Bateman v. City of W. Bountiful, 89 F.3d 704, 706 (10th Cir. 1996). Additionally, "federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." See Hartig Drug Co., 836 F.3d at 267 (internal quotation marks omitted). Therefore, while Defendant moved to dismiss for failure to state a claim under both Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(1), the Court must view the motion as arising under Rule 12(b)(1).

A Rule 12(b)(1) challenge can be either facial or factual. If a defendant's challenge to subject matter jurisdiction depends on a facial attack of the pleadings, the court must consider the allegations of the complaint as true, as it would in regard to a motion to dismiss pursuant to Rule 12(b)(6). See Mortensen v. First Fed. Savs. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). However, a motion that presents evidence challenging the factual allegations put forth by the plaintiff in the complaint is considered a factual challenge to jurisdiction. See Gould Elecs., Inc. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000). In such circumstances, the plaintiff bears

the burden of persuasion that jurisdiction exists, and the court is free to weigh evidence presented by each party outside of the pleadings. See id.

In arguing that Plaintiff has not presented the Court with a justiciable controversy under Article III, Defendant does not contest the facts in Plaintiff's amended complaint, nor does it present competing facts. Rather, Defendant argues simply that "Plaintiff's lawsuit does not involve an active controversy sufficient to make the matter ripe for judicial intervention." (Doc. No. 8 at 14.) Where the defendant has not contested the facts in the plaintiff's complaint, a jurisdictional challenge is "by definition, a facial attack." See Const. Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). Therefore, the Court analyzes the challenge to subject matter jurisdiction presented by Defendant as a facial challenge, employing the Rule 12(b)(6) standard. See id. (noting that "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)").

When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Foglia v. Renal Ventures Mgmt., 754 F.3d 153, 154 n.1 (3d Cir. 2014). However, a complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court need not accept legal conclusions set forth as factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Review of the pleadings at the motion to dismiss stage "requires the reviewing court to draw on its judicial experience and common sense." See Iqbal, 556 U.S. at 679. Additionally, a court may not assume that a

5

plaintiff can prove facts that the plaintiff has not alleged. See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

**B.     Ripeness**

Article III of the United States Constitution imposes a requirement on federal courts that they may only hear claims where a live case or controversy exists. See Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994). Ripeness is an element of justiciability under Article III, the function of which "is to determine whether a party has brought an action prematurely . . . and counsel[] abstention until such time as a dispute is sufficiently concrete." See Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003) (internal citations omitted). "Various concerns underpin [the ripeness doctrine], including . . . whether a party is genuinely aggrieved." See Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539 (3d Cir. 2017).

A ripeness challenge requires the Court to examine: (1) "the fitness of the issues for judicial decision"; and (2) "the hardship to the parties of withholding court consideration." See Abbott Lab'ys v. Gardner, 387 U.S. 136, 149 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).

"When making a 'fitness for review' determination, a court considers whether the issues presented are purely legal, and the degree to which the challenged action is final." Comite' De Apoyo A Los Trabajadores Agricolas v. Perez, 774 F.3d 173, 183 (3d Cir. 2014). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Stated differently, "[i]n order for a case to be justiciable, the salient facts must be real, not hypothetical." See Riehl v. Travelers Inc. Co., 772 F.2d 19, 22 (3d

6

Cir. 1985). Therefore, "the essential facts establishing a right to relief . . . [must] have already occurred." See id. The second prong, hardship to the parties, focuses on "whether the challenged action creates a direct and immediate dilemma for the parties, such that the lack of pre-enforcement review will put the plaintiffs to costly choices." See Phila. Fed'n of Tchrs. v. Ridge, 150 F.3d 319, 323 (3d Cir. 1998) (internal quotation marks omitted).

## III. DISCUSSION

As noted above, Defendant presents several arguments in favor of dismissal. (Doc. Nos. 7-8.) Because the Court concludes, infra, that Plaintiff's claims are not ripe for adjudication and therefore not justiciable under Article III of the United States Constitution, the Court need not address Defendant's additional arguments in favor of dismissal. See Steel Co., 523 U.S. at 94, 101.

Defendant argues that Plaintiff's claims are unripe because Plaintiff has not alleged that any loss of income payments have been withheld and because Defendant has agreed to extend payments into November 2022. (Doc. No. 7 ¶¶ 46-51.) Therefore, Defendant argues, "Plaintiff has not pled that it has been aggrieved in any way, rendering the matter unfit for a judicial decision."[1] (Id. ¶ 51.) Plaintiff, in opposition, argues that: (1) its claims present "a pure legal issue on the parties' responsibilities under the contract," and therefore no further factual development is necessary; and (2) it would be subject to substantial hardship should the Court withhold consideration of this dispute. (Doc. No. 11 at 11.) In reply, Defendant argues first that Plaintiff has not presented a pure legal issue, as it requests "monetary damages for actual harm"

---

[1] Defendant argues that Plaintiff lacks standing to bring this suit due to a discrepancy between the entity name on the policy ("MGM Enterprises, LLC") and Plaintiff's name ("MGM Enterprises, Inc."). (Doc. No. 7 ¶¶ 25-32.) The Court does not reach this issue in its justiciability analysis.

7

and, second, that the harm Plaintiff alleges is not specific enough to meet the ripeness standard under federal law. (Doc. No. 12 at 11.)

Analyzing the parties' arguments, the Court finds that Plaintiff's claims are not ripe, because: (1) no cause of action for breach of contract has accrued under state law; and (2) Plaintiff's injuries are too speculative at this point in time to satisfy the federal ripeness standard.

### A.   Plaintiff's Claims are Unripe because No Cause of Action for Breach of Contract has Accrued under State Law

As explained more fully, infra, Plaintiff's claims for breach of contract and bad faith lack "fitness for judicial review" because the causes of action have not accrued under either Pennsylvania or Virginia law. See Abbott Lab'ys, 387 U.S. at 149. As no cause of action in contract has yet accrued under either state's law, Plaintiff's claims have been brought "prematurely" and are not ripe under Article III. See Peachlum, 333 F.3d at 433; Goldstein v. Progressive Preferred Ins. Co., 2:20-cv-00294, 2021 WL 37622, *6 (W.D. Pa. Jan. 5, 2021) (holding that the plaintiffs' claim for breach of contract was unripe where the cause of action had not yet accrued under Pennsylvania law).

#### 1.   Choice of Law

As an initial matter, the Court must address the choice-of-law issue raised by the parties in their briefs. Plaintiff has brought suit under Pennsylvania law, but Defendant maintains that Virginia governs under a choice-of-law analysis. (Doc. Nos. 6, 7 ¶¶ 33-43.) The Court concludes that it need not engage in such an analysis at this time, because regardless of which state's law applies, no cause of action for breach of contract has accrued. See Oil Shipping v. Sonmez Denizcilik Ve Ticaret, 10 F.3d 1015, 1018 (3d Cir. 1993) (noting that "[g]enerally, speaking, before a choice of law question arises there must be an actual conflict between the two

8

applicable bodies of law"). Although Plaintiff asserts a second cause of action for bad faith under Pennsylvania law, that claim is similarly unripe, because it cannot be brought independently of a ripe contract claim. See Polselli v. Nationwide Mut. Fire. Ins. Co., 126 F.3d 524, 530 (3d Cir. 1997) (holding that "the predicate policy cause of action must be ripe before a [§] 8371 [bad faith] cause of action may be recognized"). As a full choice-of-law analysis is unnecessary, the Court will limit itself to a brief discussion of Plaintiff's claims under both Virginia and Pennsylvania law. See Oil Shipping, 10 F.3d at 1018.

According to generally applicable common law principles, Plaintiff has no claim for present breach of contract, as the alleged breach of duty under the commercial property insurance policy has not yet occurred. (Doc. No. 6); see Restatement (Second) of Contracts § 235(2) (1981) (noting that "[w]hen performance of a duty under a contract is due any non-performance is a breach"). Rather, Plaintiff has implicitly alleged that Defendant anticipatorily repudiated the contract by indicating that it would not continue loss of income payments under the policy past November 2022. (Doc. No. 6 ¶¶ 13-15.)

As discussed in detail, infra, while Plaintiff's claim appears to be for anticipatory repudiation of a contract, the amended complaint does not state a valid claim on those grounds under either Pennsylvania or Virginia law. A claim for breach of contract stemming from anticipatory repudiation is ripe for Article III purposes not at the time of the repudiatory act but rather when "performance becomes due or when the other party to the contract opts to treat the repudiation as a present total breach." See Barlow & Haun, Inc. v. United States, 118 Fed. Cl. 597, 616 (Ct. Cl. 2014); Franconia Ass'n v. United States, 536 U.S. 129, 143 (2002). Assuming, arguendo, that anticipatory repudiation is possible in the context of insurance policies, Plaintiff's

9

claim does not comport with the doctrine of anticipatory repudiation as it is formulated in either Pennsylvania or Virginia.[2]

## 2. Pennsylvania: Anticipatory Repudiation and Bad Faith

Under Pennsylvania law, the elements of breach of contract are "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." See Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). To bring a claim for breach of contract based on an anticipatory repudiation, "the non-breaching party may either opt to afford the repudiator an opportunity to recant and perform by awaiting performance, in which case the cause of action accrues and the statute of limitation begins to run at the time performance is due, or may elect to place the repudiating party in breach immediately." See Total Control, Inc. v. Danaher Corp., 359 F. Supp. 2d 387, 393-94 (E.D. Pa. 2005). To anticipatorily repudiate a contract, the breaching party must offer "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." See 2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila., 489 A.2d 733, 736 (Pa. 1985). Pennsylvania's formulation of the doctrine is strict, and where a party evinces an "intention to avoid performance only if there is a legal basis for the refusal of performance,"

---

[2] There is considerable debate over whether anticipatory repudiation is possible in the insurance context, primarily because insurance policies have traditionally been considered unilateral contracts and therefore not capable of being repudiated prior to the time performance is due. See Smyth v. United States, 302 U.S. 329, 356 (1937) (holding that "the rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts"); Hazel Beh & Jeffrey W. Stempel, Misclassifying the Insurance Policy: The Unforced Errors of Unilateral Contract Characterization, 32 Cardozo L. Rev. 85, 136 (2010) (noting that "the characterization of insurance as a unilateral contract has limited the application of anticipatory repudiation"). The Pennsylvania Supreme Court has held that insurance contracts are unilateral contracts. See Rittenhouse Found., Inc. v. Lloyds London, 277 A.2d 785, 789 (Pa. 1971). However, as far as this Court is aware, that court has not squarely addressed the applicability of anticipatory repudiation to unilateral contracts. The Virginia Supreme Court, to this Court's knowledge, has not spoken definitively on whether insurance contracts are unilateral or bilateral or whether they can be anticipatorily repudiated.

there is no anticipatory breach.  See id. at 737 (holding no anticipatory repudiation had occurred in a dispute between a landlord and tenant about the interpretation of lease terms); Khodara Env't II v. Chest Twp., 3:20-cv-0296, 2007 WL 4375929, *5 (W.D. Pa. Nov. 30, 2007) (holding that "the statements attributable to the [d]efendant evidencing a belief that the contract is void are [] not statements of repudiation").

In this case, the dispute between the parties seems to be one of their legal obligations under differing interpretations of the insurance contract, rather than of one party's refusal to perform a clear contractual obligation.  Plaintiff insists that Defendant is responsible for providing loss of income payments until business operations at the impacted apartment complex can fully resume.  (Doc. No. 6 ¶¶ 10-11.)  Defendant, in contrast, indicated to Plaintiff that it reads the insurance contract in conjunction with the parties' communications to provide only eighteen (18) months of loss of income coverage.  (Id. at ¶¶ 9, 11-14.)  Defendant has sought clarification of its contractual responsibilities in a declaratory judgment action filed in the Circuit Court of the City of Virginia Beach.[3]  (Doc. No. 11-1); see Rockingham Ins. Co. v. MGM Ins., Inc., CL22000781-00 (Va. Cir. Ct. filed Feb. 18, 2022).  Under Pennsylvania law, Defendant has not anticipatorily repudiated its contract with Plaintiff by "an absolute and unequivocal refusal to perform."  See 2401 Pa. Ave. Corp., 489 A.2d at 736.  Rather, Defendant has simply disputed the correct interpretation of the contract and has sought a declaratory judgment in another court, indicating that it intends to "avoid performance only if there is a legal basis" to do so.  See id. at 737.

---

[3] The Court may take judicial notice of cases pending in state courts.  See Fed. R. Civ P. 201(b)(2) (stating that a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

In addition, the element of "resultant damages" requires that the plaintiff's loss be provable to a "reasonable certainty." See Ware v. Rodale Press, Inc., 322 F.3d 218, 225-26 (3d Cir. 2003). "At a minimum," this element requires "a rough calculation that is not too speculative, vague, or contingent upon some unknown factor." See id. (internal quotation marks omitted). Plaintiff's damages claim is based on future events that may not happen or, if they do, may result in an unpredictable range of damages amounts based on the time needed to complete fire remediation efforts after Defendant ceases loss of income payments. Therefore, Plaintiff has not adequately alleged its damages for a Pennsylvania breach of contract claim.

As Plaintiff's amended complaint does not demonstrate that the contract has been breached or that it has (or will) incur damages as a result of Defendant's actions, a cause of action has not accrued for breach of contract under Pennsylvania law. See Gorski, 812 A.2d at 692. As discussed, supra, because no cause of action has yet accrued for breach of contract of the insurance agreement, Plaintiff's claim for bad faith under 42 Pa.C.S. § 8371 is also unripe. See Polselli, 126 F.3d at 530; Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 722 (E.D. Pa. 1994) (holding that a "bad faith claim under § 8371 must be related to at least one other colorable claim over which the court has jurisdiction").

### 3. Virginia: Anticipatory Repudiation

A cause of action for breach of contract has likewise not accrued under Virginia law. In Virginia, "the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." See Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009). For a plaintiff to sue for breach of contract based on anticipatory repudiation, "the repudiation of a contract must cover the entire

performance to which the contract binds the promisor and the renunciation must be absolute and unequivocal." See Simpson v. Scott, 53 S.E.2d 21, 24 (Va. 1949).  Courts applying Virginia law have found a lack of "absolute and unequivocal" renunciation in a variety of cases, each highly dependent on the unique factual context under which they arose.  See, e.g., Link v. Weizenbaum, 326 S.E.2d 667, 669-70 (Va. 1985) (finding no anticipatory repudiation covering "the entire performance of the contract" where only one obligor repudiated the contract and the other was jointly and severally liable for all contractual obligations);  Johnston v. Johnston, No. 92-cv-1623, 1993 WL 891, *1 (4th Cir. Jan. 5, 1993) (holding that under Virginia law a contract for sale of property had not been anticipatorily breached where a portion of the contract had already been performed); Tandberg, Inc. v. Advanced Media Design, Inc., No. 1:09-cv-00863, 2009 WL 3669739, *2-3 (E.D. Va. Nov. 3, 2009) (holding that the "exacting requirements" for anticipatory breach were not met where the breaching party continued to perform under the contract after the alleged breach).

 Here, there is no indication that Defendant's repudiation covers "the entire performance" of the contract.  Defendant has apparently continued to perform under the contract despite its initial statement that it would discontinue payments in May 2022.  See Tandberg, Inc., 2009 WL 3669739, at *2-3 (finding no anticipatory repudiation where the breaching party did not "unconditionally refuse[] to perform the contract in all circumstances").  Additionally, Plaintiff's claim rests on the assertion that Defendant is obligated to keep compensating Plaintiff for lost income for as long as it takes it to remediate the fire damage to its building, even if those payments extend past November 2022.  (Doc. No. 6 ¶ 19.)  However, it is not clear that Plaintiff will require loss of income payments past the date that Defendant has agreed to provide those payments.  Depending on future events, the anticipated breach may not cover any part of the

contract's performance, meaning that Defendant's stated intention to discontinue performance may never ripen into an actual breach. Therefore, the breach that will stem from Defendant's repudiation is potentially only partial and could well be non-existent. Accordingly, the Court cannot find that Defendant has committed an "absolute and unequivocal" renunciation of the contract at this time. See Simpson, 53 S.E.2d at 24.

In addition, the element of "injury or damage to the plaintiff caused by the breach of obligation" has not been adequately alleged by Plaintiff. See Sunrise Continuing Care, LLC, 671 S.E.2d at 135. Plaintiff must "establish the element of damages with reasonable certainty," and therefore, "[d]amages that are contingent, speculative, and uncertain are not recoverable." See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co., 506 F. Supp. 3d 360, 368-69 (E.D. Va. 2020). At this moment, Plaintiff's damages are purely speculative, and it therefore cannot fulfill the third element of breach of contract under Virginia law. Accordingly, because Plaintiff's amended complaint does not demonstrate either breach of its contract with Defendant or sufficiently certain damages, a cause of action for breach of contract has not yet accrued under Virginia law. See Sunrise Continuing Care, LLC, 671 S.E.2d at 135.

**B.  Plaintiff's Claim is Unripe because it is Based on Contingent Future Events**

Plaintiff's claim is also unfit for judicial decision because its claim for damages is highly speculative and based on contingent future events. Under the first prong of the ripeness test, "fitness of the issues for judicial decision," the mere possibility of damages is typically not enough to make a controversy ripe for adjudication. See, e.g., In re Jacks, 642 F.3d 1323, 1332 (11th Cir. 2011) (holding a suit by a debtor related to bankruptcy-related fees was unripe because the debtor's obligation to pay the fees was dependent on the outcome of the bankruptcy proceeding); Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006) (challenge to fees

assessed against an inmate but not yet collected did not amount to a "cognizable loss" and the plaintiff's claim was therefore unripe).  While justiciability can be based on speculative future financial harm, courts generally require some non-speculative present injury, even if not strictly monetary in nature.  See, e.g., Clinton v. City of New York, 524 U.S. 417, 431 (1998) (holding that injury in fact existed where there was no direct, present financial harm because the "revival of a substantial contingent liability immediately and directly affects the borrowing power, financial strength, and fiscal planning of the potential obligor"); Jones v. Gale, 470 F.3d 1261, 1267 (8th Cir. 2006) (holding that a feedlot owner's challenge to the constitutionality of a law was justiciable where it would prevent him from entering into certain contracts with out-of-state corporations; even though he had not entered into such a contract, the law negatively affected his "ability to earn income, borrow, and plan for [his] financial future").

      While it is true that, in some cases, the threat of future harm is sufficiently concrete for a case to be considered ripe under Article III, this is not the case here.  Plaintiff has not pleaded that Defendant's intention to cut off loss of income payments in November 2022 has caused it present harm.  Moreover, the future loss is purely speculative and may not ever come to fruition.  While Plaintiff has alleged in its amended complaint that it will require loss of income payments "beyond May 20, 2022," and states in its reply brief that "[b]oth parties anticipate that MGM's losses will exceed eighteen months," Plaintiff gives no concrete details about how long the fire remediation is likely to continue before it can resume business activities.  (Doc. Nos. 6 ¶ 17, 11 at 11-12.)  Therefore, the potential denial of loss of income payments amounts merely to a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all."  See Texas, 523 U.S. at 300.

Plaintiff has also alleged that it will be subject to hardship if the Court delays a ruling on its claims in the form of "having its relief delayed months . . . only to necessitate [Plaintiff] filing the same action." (Doc. No. 11 at 11-12.) While the Court understands that Plaintiff may incur damages if its need for loss of income payments continues beyond November 2022, this dilemma is too speculative to be considered "direct and immediate" such that the Court would be justified in ruling on a claim that is not yet fully ripe. See Phila. Fed'n of Tchrs., 150 F.3d at 323. Therefore, the Court cannot find that Plaintiff is "genuinely aggrieved" for ripeness purposes. See Plains All Am. Pipeline L.P., 866 F.3d at 539.

## IV.     CONCLUSION

For all of the foregoing reasons, Plaintiff's claims for breach of contract and bad faith against Defendant are not justiciable under Article III of the Constitution because they are unripe. Therefore, Plaintiff's amended complaint must be dismissed without prejudice to its right to refile when, or if, the controversy becomes justiciable. An appropriate Order follows.